CRAIG H. MISSAKIAN (CABN 125202)
United States Attorney

JEFF MITCHELL (CABN 236225)
Chief, Criminal Division

MOLLY K. PRIEDEMAN (CABN 302096)
ERIC CHENG (CABN 274118)
Assistant United States Attorney

    1301 Clay Street, Suite 340S
    Oakland, California 94612
    Telephone: (510) 637-3680
    FAX: (510) 637-3724
    Molly.Priedeman@usdoj.gov
    Eric.Cheng@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) CASE NO. 4:24-CR-00406 YGR-2 |
| Plaintiff, | ) |
| | ) **UNITED STATES' SENTENCING** |
| v. | ) **MEMORANDUM** |
| | ) |
| SENE MALEPEAI, | ) |
| | ) |
| Defendant. | ) |

## I.    INTRODUCTION

In June 2021, Defendant Sene Malepeai was a passenger in a car with her co-defendant Freddie Davis and two other individuals who were part of a robbery crew in the East Bay focused on robbing people of Asian descent because they were "easy targets" who wouldn't fight back.  After the crew robbed victim Q.D. and her possessions were divvied up, Defendant and Davis were caught on camera fraudulently using Q.D.'s credit card—and when they were later arrested, they had Q.D.'s wallet and card on hand.

On September 17, 2024, Defendant pleaded guilty to wire fraud and aggravated identity theft, a violation that carries a two-year mandatory minimum sentence.  As part of her plea agreement, Defendant agreed to participate in the Leading Emerging Adults to Develop Success (LEADS) program, pursuant to agreed-upon terms set forth in a LEADS Program Contract.  The parties agreed that if Defendant successfully completed the LEADS program, the government would join in a motion to permit Defendant to withdraw the guilty plea entered by Defendant as to aggravated identify theft violation (Count Two), and the government would move to dismiss Count Two.

Pretrial Services reports that Defendant has successfully completed the goals of the LEADS program; thus, the government anticipates joining a motion to permit Defendant to withdraw her guilty plea as to Count Two, and moving to dismiss Count.  For the reasons set forth below, the government recommends a time served sentence as to Count One.  This proposed sentence is sufficient, but not greater than necessary, to achieve the goals set forth in 18 U.S.C. § 3553(a)(2).

## II.    BACKGROUND

### A.    Factual Background

On June 17, 2021, San Leandro Police Department (SLPD) officers responded to a report of a robbery in the parking lot outside Costco, located at 1900 Davis Street in San Leandro, California.  PSR ¶ 7.  The victim of the robbery was an Asian female, identified as Q.D.  *Id.*

The robbery occurred in the store's parking lot after she exited Costco with her mother.  PSR ¶ 8. As she was walking to her vehicle, a car drove alongside her.  *Id.*  According to Q.D.'s statements to SLPD, an individual reached out of a rear window and grabbed hold of Q.D.'s purse from the moving car.  *Id.*  Q.D. held on to her purse and was dragged the width of several cars.  *Id.*  The car then sped

away, and she let go of her purse. *Id.* When Q.D. released her grasp on the purse, she fell to the ground, resulting in bodily injuries, including abrasions to her leg and swelling on her hand. *Id.* Several witnesses heard Q.D. scream, heard her body hit the asphalt, and saw a black Honda speed away from the incident. *Id.*

Parts of the robbery were captured on Costco's surveillance cameras. PSR ¶ 9. The footage revealed that the suspect vehicle was a black Honda Accord, with a license plate number that was registered to Defendant's co-defendant Freddie Davis. *Id.* The video surveillance footage captured the subject vehicle approaching Q.D. from behind. *Id.* It also captured the vehicle speeding away, and Q.D. falling to the ground. During the robbery, Q.D.'s purse was stolen, which included two cell phones, a PayPal MasterCard credit card, and approximately $1,800 in cash. *Id.* In the days following the robbery, Q.D. noted nearly a dozen unauthorized transactions on her stolen credit card, including a $98.78 charge at Foot Locker in San Leandro, California on June 19, 2021. *Id.*

Law enforcement obtained surveillance camera footage capturing purchases made at the San Leandro Foot Locker on June 19, 2021, during the time that Q.D.'s stolen credit card was utilized. PSR ¶ 10. The footage revealed on June 19, 2021, at 2:30 p.m., a female, identified as Defendant, and her co-defendant Freddie Davis approached the register. *Id.* Defendant fraudulently purchased a pair of Nike Air Force 1 shoes for $98.78 and charged them to Q.D.'s stolen credit card. *Id.* Defendant then handed the credit card to Davis, who placed the card inside his pant pocket. *Id.* Thereafter, the two individuals left the store. *Id.*

On June 24, 2021, SLPD detectives arrested Davis while he was attempting to leave a parking lot in San Leandro in the same black Honda Accord that was used in the robbery at Costco. PSR ¶ 11. Malepeai was in the vehicle at the time of Defendant's arrest. *Id.* SLPD conducted a search of Davis's car and recovered Q.D.'s wallet on the front passenger's floorboard, where Defendant had been seated. SLPD also seized Q.D.'s stolen credit card from Davis's person. PSR ¶ 12.

Audio recordings captured on June 24, 2021, and July 8, 2021, contained numerous statements by Defendant related to this incident and others. PSR ¶ 13. Defendant stated that she was in a romantic relationship with Davis and that she was in the front passenger seat of Davis's car during the June 17,

2021, robbery at Costco. *Id.* She identified Davis as the driver during the robbery. *Id.* She identified the driver side rear passenger as R.T. and the passenger side rear passenger as E.S. *Id.*

Defendant stated that the day of the robbery, Davis, E.S., and R.T., had discussed going to Chinatown to rob Asian women with purses or jewelry. PSR ¶ 14. Defendant stated that they first drove to Chinatown to look for Asians with purses, then went to a Walmart parking lot, and eventually ended up at the San Leandro Costco. *Id.* Defendant stated that she was aware that R.T. and E.S. preferred robbing Asians because they talked about robbing Asians, and she had seen a news article about a robbery of an Asian individual committed by R.T. *Id.* Defendant stated that E.S. and R.T. like to rob Asian females because they think they have more money, and because Asians are "easy targets" who don't fight back. *Id.* Defendant stated that the day of the robbery at Costco, they first tried to steal another woman's purse in the parking lot, but when they approached the woman, she saw the car, and pulled her purse away. PSR ¶ 15. Defendant stated that when she saw Q.D., she knew that R.T. and E.S. were going to want to rob her. *Id.* She further stated that it was E.S. who reached out the window and grabbed Q.D.'s purse. *Id.*

**B.    Criminal History**

Defendant has several theft convictions from 2016 and a DUI from 2024. PSR ¶¶ 39-42.

**C.    Mitigating Factors**

Defendant has had a difficult background. She was raised by her maternal grandmother in American Samoa until the age of 11. PSR ¶ 50. At 11, she was first introduced to her biological parents and moved to San Francisco to live with them. PSR ¶ 51. Her mother physically abused her, and she was placed in foster care from age 13-15. PSR ¶ 52.

Defendant was in a relationship with her co-defendant Davis from 2019 until the time of her arrest, and they share two children together, aged 5 and 2. PSR ¶ 53. Davis has been arrested in numerous incidents involving domestic violence against Defendant. *See* Dkt. No. 135 at 5–6. In July 2020, Davis was arrested by the Oakley Police Department for obstruction/resisting an officer and vandalism following a domestic disturbance involving Malepeai. *Id.* In February 2021, Davis was arrested by the Pittsburg Police Department for kidnapping, inflicting corporal injury on cohabitant, carrying a loaded/unregistered handgun, illegally possessing a weapon, and carrying a concealed

U.S. SENTENCING MEMO    4
4:24-CR-00406 YGR-1

weapon in vehicle. *Id.* After Malepeai (visibly pregnant) entered a store and asked to use the phone, Davis was observed grabbing her, shoving her outside of a store, and shoving her into his vehicle. *Id.* During a later traffic stop, Malepeai confirmed to officers that she was involved in this domestic violence incident and Davis was arrested with a backpack containing a firearm. *Id.* Also in July 2021, Davis was arrested by the BART Police Department after he was observed by police running after Malepeai, then ultimately holding her with his arm around her shoulder/neck area. *Id.* Davis was placed under arrest as he had an active restraining order from Malepeai. *Id.* The arresting officer observed visible injuries on Malepeai's neck area and bruising near her throat, but Malepeai denied domestic violence and declined medical attention. *Id.*

### D.      Participation in the LEADS Program

Defendant has been participating in the LEADS Program for the last 20 months. Defendant has at times struggled during the program, resulting in several violations. PSR ¶ 4. Despite these violations, Defendant has made substantial progress and, according to Pretrial Services' latest report, has successfully completed her goals for the program. *See* LEADS Supervision Status Report dated May 29, 2026. Notably, she obtained housing, has been attending and participating in mental health counseling, has completed the DUI classes, and has secured employment. *Id.* Morever, Pretrial Services noted that Defendant has "developed tools and skills that better position her to make positive decisions for herself and her family." *Id.* As a result, Pretrial Services has determined that Defendant has "made meaningful strides toward improving her overall stability and reducing criminogenic risk." *Id.*

### E.      Guidelines Calculation

The  United States Probation Office calculates the base offense level as 7, pursuant to U.S.S.G. § 2B1.1(a)(1); a two-level increase pursuant to U.S.S.G. § 2B1.1(b)(3) applies because the offense involved theft from the person of another; and a two-level reduction pursuant to U.S.S.G. § 3E1.1(a) applies based on Defendant's Acceptance of Responsibility, resulting in a Total Offense Level of 7. This calculation of the Guidelines is inconsistent with the parties' plea agreement, and the government stands by the calculation of the parties' plea agreement without the application of the two-level increase pursuant to U.S.S.G. § 2B1.1(b)(3), given that Defendant did not admit to participating in the robbery of

the victim.  Rather, she was present in the vehicle, while Davis and others participated in the robbery. The government instead calculates the base offense level as 7, pursuant to U.S.S.G. § 2B1.1(a)(1); and a two-level reduction pursuant to U.S.S.G. § 3E1.1(a) applies based on Defendant's Acceptance of Responsibility, resulting in a Total Offense Level of 5.   An offense level of 5 with a Criminal History Category III yields an advisory sentencing range of 1 to 7 months of imprisonment.

**III.    DISCUSSION**

    **A.    Applicable Law**

The Court should impose a sentence sufficient, but not greater than necessary, to reflect the purposes of sentencing that Congress identified in 18 U.S.C. § 3553(a)(2).  *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008).  The Court should begin the process of determining an appropriate sentence by calculating the correct sentencing range under the Guidelines.  *Id.*  After determining the appropriate Guidelines calculation, the Court should then evaluate the sentence for substantive reasonableness in light of the factors set out in Section 3553(a).  *Carty*, 520 F.3d at 991–93.

Under 18 U.S.C. § 3553(a), in arriving at the appropriate sentence for the defendant, the Court should consider these factors applicable to this case, among others:

    (1)    the nature and circumstances of the offense and the history and characteristics of the defendant;

    (2)    the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

    (3)    the need for the sentence imposed to afford adequate deterrence to criminal conduct;

    (4)    the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

    (5)    the need to provide restitution to any victims of the offense.

    **B.    Recommendation**

The government respectfully recommends that the Court impose a sentence of time served for Count One[1]—followed by three years of supervised release, with an order of $6,290.26 in restitution,

---

[1] The government anticipates joining in a motion to permit Defendant to withdraw the guilty plea entered by Defendant as to aggravated identify theft violation (Count Two), and moving to dismiss

based upon a consideration of the Guidelines and 18 U.S.C. § 3553(a) factors.

Defendant's commission of fraud and the underlying conduct were serious crimes that victimized Q.D. and the community at large. Moreover, these are not Defendant's first convictions, as she has committed theft on several other occasions. PSR ¶¶ 39–41.

At the same time, there are several mitigating factors at issue in this case that support the proposed sentence. First, Defendant appears to have had a traumatic childhood, including physical abuse by her mother. Second, Defendant committed the crime with her former partner and co-defendant, who has a long history of committing domestic violence against her, including violently shoving her in his vehicle while eight months pregnant. Third, Defendant has successfully completed the LEADS program over a twenty-month period. Defendant appeared in front of the Court on numerous occasions, and worked hard to meet her goals, including securing employment, completing her DUI courses, and participating in mental health treatment. These accomplishments are strong indicators of success going forward, are indicative of rehabilitation, and should deter future criminal conduct in the future.

The government also recommends a three-year term of supervised release for Defendant. The government agrees with the conditions recommended in the PSR, including the expanded suspicionless search condition agreed to by the parties to serve the interests of specific deterrence and rehabilitation. In addition, the government recommends that the Court impose Probation's recommended "no contact" condition with co-defendant Davis, except to exchange their children or to co-parent.[2] Importantly, the recommended condition addresses the fact that Defendant committed the charged conduct with Davis, Davis's history of domestic violence against Malepeai and restraining orders from her, accounts for Defendant's violative conduct in contacting Malepeai while he was briefly on pretrial release, and accounts for his conduct to circumvent court orders while in custody.

Finally, these offenses involved a victim, Q.D., and Defendant should be ordered to pay $6,290.26 in restitution to repay the losses caused by her and her co-defendant's conduct.

---

Count Two.

[2] The condition should be modified to allow Defendant to coparent her shared children with Davis, which is consistent with Davis's imposed condition.

U.S. SENTENCING MEMO
4:24-CR-00406 YGR-1
7

## IV.   CONCLUSION

For the foregoing reasons, the United States respectfully requests that the Court impose a sentence of time served for Count One, followed by three years of supervised release with the parties' agreed-upon expanded suspicionless search condition and other conditions recommended in the PSR (including the "no contact" condition with co-defendant Davis, except to exchange their children and co-parent), along with an order of restitution for $6,290.26.  The Court should acknowledge that $3,290.26 of this restitution amount should be credited to Defendant as paid, as it was previously deposited by co-defendant Davis, with the remainder owed to Q.D.

DATED:  June 3, 2026

Respectfully submitted,

CRAIG H. MISSAKIAN
United States Attorney


                    /s/
MOLLY K. PRIEDEMAN
ERIC CHENG
Assistant United States Attorneys

U.S. SENTENCING MEMO
4:24-CR-00406 YGR-1

8